UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WENDY AMINZADEH,<br><br>    Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL SECURITY,<br><br>    Defendant. | 1:10-cv-01068 GSA<br><br>**ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT** |

## **BACKGROUND**

Plaintiff Wendy Aminzadeh ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for disability insurance and supplemental security income benefits pursuant to Titles II and XVI of the Social Security Act. The matter is currently before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Gary S. Austin, United States Magistrate Judge.[1]

---

[1] The parties consented to the jurisdiction of the United States Magistrate Judge. (*See* Docs. 11 & 12.)

1

# FACTS AND PRIOR PROCEEDINGS[2]

In June 2007, Plaintiff filed applications for disability insurance and supplemental security income benefits, alleging disability as of July 1, 1993. AR 119-129. Plaintiff's applications were denied initially and on reconsideration, and Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). AR 79-89. ALJ Christopher Larsen held a hearing on October 21, 2009, and issued an order denying benefits on December 4, 2009, finding Plaintiff was not disabled. AR 12-21. On February 26, 2010, the Appeals Council denied review. AR 3-5.

**Hearing Testimony**

ALJ Larsen held a hearing on October 21, 2009, in Fresno, California. Plaintiff appeared and testified; she was represented by attorney Melissa Proudian. Plaintiff's mother Suzanne Everitt also testified, as did Vocational Expert ("VE") Cheryl R. Chandler. AR 23-57.

*Plaintiff's Testimony*

Plaintiff was thirty-three years old on the date of the hearing. She is not married and has no children. Plaintiff estimated she was five feet, seven inches tall and weighed between 241 and 245 pounds. AR 28. She lives in Fresno with her mother and stepfather. AR 29.

When Plaintiff was asked whether she drove, she indicated that she did not. She does not have a California Driver's License because she has not read the handbook nor taken the licensing exam. AR 29-30. She was not sure whether she had ever taken the licensing exam. AR 30. Plaintiff does have a California Identification card. AR 30.

Although she graduated from high school, Plaintiff was in special education classes, believing she took such classes for at least four periods per day. AR 30. Plaintiff also attended Fresno City College in the WAVE program - a program for disabled students to assist with job placement. AR 30-31. She recalls taking classes in child development, janitorial duties and food

---

[2] References to the Administrative Record will be designated as "AR," followed by the appropriate page number.

preparation. Plaintiff believes she earned a certificate of completion for the WAVE program in 1999. AR 31-32.

Plaintiff received job placement assistance through a Department of Rehabilitation program as well. That assistance includes help from job coaches. Plaintiff obtained a position at the Save Mart Center with Ovations through the program. AR 32-33. She maintains that position in food service, preparing condiments such as jalapenos, onions, relish and salsa during events held at the center. AR 33, 35. She works three to six times per month, for about five to six hours each, depending upon the number of events held. AR 33-34. She has had the position for about five years. AR 36. Plaintiff was not sure whether the heaviest weight she lifted was under or over ten pounds. AR 34-35.

Prior to working at the Save Mart Center, Plaintiff worked at Von's, bagging groceries and collecting shopping carts. However, she "got in trouble" with her boss for telling a customer "to go to Save Mart." AR 36. She also had trouble getting along with other employees at Von's because when she became upset she "wouldn't control [her] mouth." AR 37-38. Plaintiff could not explain what she meant, but did indicate that after she became upset it was difficult for her to focus on her task. AR 38-39. Plaintiff also worked for eight days at a McDonald's. AR 39.

When asked specifically about high school, Plaintiff indicated that she attended special education classes as a result of her inability to understand things well. She often has to have instructions repeated on multiple occasions, and must be shown a demonstration. AR 40. When asked, for example, if she would need to be told or shown how to perform a task if the task was changed slightly, Plaintiff indicated that if the task to be performed at the Save Mart Center changes a little, the job coach or other staff assist her to incorporate the change. AR 41.

At home, Plaintiff has chores to perform, such as vacuuming, washing windows, emptying the dishwasher and taking care of her pets. AR 28, 42. Sometimes her mother has to remind her about her chores. AR 42. She has never lived on her own because she is unable to support herself. AR 42. When asked about spending money, Plaintiff indicated that her mother

3

gives her about $22 a month for pet sitting. AR 42. She can keep track of her money and add and subtract, but she cannot maintain a budget. AR 42. Plaintiff has a checking, saving and money market account. She uses the checking account because her earnings are deposited directly into that account, although she does not use the checks. She prefers to use cash. AR 43.

When she was asked whether she could read the newspaper, Plaintiff replied that she could but does not do so. She can write a note or leave a message for her mother if someone were to call the house and leave a message. AR 43. When asked what she did when she was home, Plaintiff indicated that she watches television, and cares for and plays with her pets. AR 43. She occasionally sees friends when they are not busy, and goes out to eat with her cousin. Plaintiff enjoys going out with friends, but does not do so often. AR 44.

### *Suzanne Everitt's Testimony*

Plaintiff's mother Suzanne Everitt testified outside of her daughter's presence. AR 45. Plaintiff's mother indicated that Plaintiff has never lived on her own. AR 46. Plaintiff was identified as mildly retarded during as examination prepared while she was in grammar school. She was placed in special education classes throughout her primary education. AR 46.

With specific regard to the WAVE program that Plaintiff attended through Fresno City College, Ms. Everitt indicated her daughter received training in janitorial skills and food service. AR 46-47. Plaintiff currently works about two to three, four-to-six hour shifts per month with the assistance of a job coach. AR 47.

Ms. Everitt testified that Plaintiff gets frustrated or upset everyday. AR 47-48. This is the result of Plaintiff's inability to understand certain things. It causes her to get angry, and can also cause her to be extremely rude. More specifically, Ms. Everitt indicated that Plaintiff "can go from being perfectly great to very rude and frustrated in a couple minutes." Plaintiff will calm down over time and with assistance. AR 48. Ms. Everitt is aware that this behavior has affected Plaintiff's ability to maintain employment. In particular, she is aware of the difficulties that Plaintiff encountered while employed at Von's. AR 48. She believes there were younger

4

employees who would tease Plaintiff. AR 48-49. Ms. Everitt believes Von's staff were aware of Plaintiff's limitation and learning disabilities because Ms. Everitt herself had mentioned it to a manager as she regularly shopped in the store. AR 49. She was also aware that there were a number of managers or assistant managers who would help Plaintiff by being very kind and patient. AR 49-50.

When Ms. Everitt was asked whether her daughter could work for eight hours, five days a week at a regular job without the assistance of a job coach or extra help, she replied in the negative. Ms. Everitt explained that while Plaintiff may have the skills to handle a particular job, she does not always understand things correctly or she misinterprets things said or done. When Plaintiff misinterprets an action to involve another person "being mean to her," she responds by getting "angry and [she] can be extremely rude." AR 50. Therefore, Ms. Everitt believes it would be extremely difficult for Plaintiff to maintain a job without assistance or intervention on a regular basis. AR 50. She believes Plaintiff's frustration and anger would cause her to lose a regular job. AR 50-51.

### *VE Chandler's Testimony*

VE Cheryl Chandler was asked to classify Plaintiff's past work. The VE indicated that Plaintiff's work at both Von's and Ovations can be best described as food sales clerk, unskilled, with an SVP[3] of two, and a medium exertion level, or, as a hand packager, also unskilled, medium exertion work. AR 52-53.

The VE was asked to assume a hypothetical worker of Plaintiff's age, education and work experience, who can perform work at the medium exertion level with a limitation to simple, repetitive tasks. The VE testified that such an individual could perform Plaintiff's past relevant work. AR 53. Additionally, the VE testified that this worker could perform other jobs such as: a dishwasher, DOT[4] 318.687-010, unskilled and medium, with 31,900 position in the state;

---

[3] "SVP" refers to specific vocational preparation.

[4] "DOT" refers to the Dictionary of Occupational Titles.

cafeteria attendant, DOT 312.687-010, unskilled and medium, with 34,000 positions available; and general food preparation, DOT 317.687-010, unskilled and medium, with 20,400 positions available in the state. Approximately nine times that number of positions are available nationwide. AR 53-54.

Next, in a second hypothetical, the VE was asked to assume a hypothetical worker of Plaintiff's age, education and work history, with the ability to perform medium exertion work, and a limitation to simple, repetitive tasks requiring additional supervision, as well as an inability to maintain a competitive pace throughout an eight-hour day. AR 54. VE Chandler testified that no work was available for such an individual. AR 54.

**Medical and Academic Records**

The entire medical record was reviewed by the Court. AR 320-518. Additionally, the Court reviewed the academic records provided. AR 308-319. Both types of evidence will be referenced below as necessary in this Court's decision.

**ALJ's Findings**

Using the Social Security Administration's five-step sequential evaluation process, the ALJ determined that Plaintiff did not meet the disability standard. AR 12-21.

More particularly, the ALJ found that Plaintiff had not engaged in substantial gainful activity since July 1, 1993. AR 14. Further, the ALJ identified obesity, lumbar degenerative disc disease and borderline intellectual functioning as severe impairments. AR 15. Nonetheless, the ALJ determined that the severity of the Plaintiff's impairments do not, individually or in combination, meet or exceed any of the listed impairments. AR 15-16.

Based on his review of the entire record, the ALJ determined that Plaintiff has the residual functional capacity ("RFC") to lift and carry fifty pounds occasionally and twenty-five pounds frequently, can sit or stand and walk for six hours in an eight-hour day, and can perform simple repetitive tasks. AR 16-19.

Next, the ALJ determined that Plaintiff had no past relevant work. AR 20. Nevertheless,

based upon Plaintiff's age, education, work experience and RFC, the ALJ determined there were jobs that existed in significant numbers in the national economy that Plaintiff could perform. Specifically, the ALJ found Plaintiff could perform the work of a dishwasher, cafeteria attendant or food preparation worker. AR 20-21. Therefore, the ALJ determined Plaintiff was not disabled. AR 21.

## SCOPE OF REVIEW

Congress has provided a limited scope of judicial review of the Commissioner's decision to deny benefits under the Act. In reviewing findings of fact with respect to such determinations, this Court must determine whether the decision of the Commissioner is supported by substantial evidence. 42 U.S.C. § 405 (g). Substantial evidence means "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 402 (1971), but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119, n. 10 (9th Cir. 1975). It is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 401. The record as a whole must be considered, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion. *Jones v. Heckler,* 760 F.2d 993, 995 (9th Cir. 1985). In weighing the evidence and making findings, the Commissioner must apply the proper legal standards. *E.g.*, *Burkhart v. Bowen*, 856 F.2d 1335, 1338 (9th Cir. 1988). This Court must uphold the Commissioner's determination that the claimant is not disabled if the Secretary applied the proper legal standards, and if the Commissioner's findings are supported by substantial evidence. *See Sanchez v. Sec'y of Health and Human Serv.*, 812 F.2d 509, 510 (9th Cir. 1987).

## REVIEW

In order to qualify for benefits, a claimant must establish that he is unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 1382c (a)(3)(A). A claimant must show that he has a physical or mental impairment of

such severity that he is not only unable to do her previous work, but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. *Quang Van Han v. Bowen*, 882 F.2d 1453, 1456 (9th Cir. 1989). The burden is on the claimant to establish disability. *Terry v. Sullivan*, 903 F.2d 1273, 1275 (9th Cir. 1990).

In an effort to achieve uniformity of decisions, the Commissioner has promulgated regulations which contain, inter alia, a five-step sequential disability evaluation process. 20 C.F.R. §§ 404.1520 (a)-(f), 416.920 (a)-(f) (1994).

Here, Plaintiff argues that the ALJ erred by failing to find that Plaintiff met Listing 12.05C. (Doc. 16 at 6-7.)

## DISCUSSION

Plaintiff asserts she is disabled because she meets the requirements of Listing 12.05C for mild mental retardation "with an additional limitation that significantly limits her ability to perform work." (Doc. 16 at 6.) More particularly, she asserts that the record establishes her performance IQ score in 2007 qualifies, and that the record as a whole supports such a finding. (Doc. 16 at 6-7.) Relatedly, Plaintiff also asserts that even if this Court were to find no error with regard to Listing 12.05C, the ALJ erred at step five by identifying jobs that only persons with IQ scores above the tenth percentile could perform. (Doc. 16 at 7.) The Commissioner contends the ALJ did not err, and that his findings are supported by substantial evidence and proper analysis. (Doc. 18.)

The Disability Evaluation Under Social Security (Blue Book September 2008) defines mental retardation as follows:

> **12.05 *Mental retardation***:  Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
> A. Mental incapacity evidenced by dependence upon others for personal needs (e.g., toileting, eating, dressing, or bathing) and inability to follow

8

```
        directions, such that the use of standardized measures of intellectual functioning is
        precluded;
                OR
                B.  A valid verbal, performance, or full scale IQ of 59 or less;
                OR
                C.  *A valid verbal, performance, or full scale IQ of 60 through 70 and a
        physical or other mental impairment imposing an additional and significant
        work-related limitation of function*;
                OR
                D.  A valid verbal, performance, or full scale IQ of 60 through 70,
        resulting in at least two of the following:
                1.  Marked restriction of activities of daily living; or
                2.  Marked difficulties in maintaining social functioning; or
                3.  Marked difficulties in maintaining concentration, persistence, or pace;
        or
                4.  Repeated episodes of decompensation, each of extended duration.
```

Emphasis added. *See* http://www.ssa.gov/disability/professionals/bluebook/12.00.

ALJ Larsen found as follows:

> Ms. Aminzadeh's learning disability does not significantly limit her ability to perform basic work activities and is non-severe.  Limited records indicate she "might" have experienced some difficulties in learning, but she testified she graduated from high school.
> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
> Although Ms. Aminzadeh has "severe" impairments, they do not meet the criteria of any listed impairments . . ..  No treating or examining physician has mentioned findings equivalent in severity to the criteria of any listed impairment, nor does the evidence show medical findings that are the same or equivalent to those of any listed impairment . . ..
> . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
> Ms. Aminzadeh's mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listing 12.05.  In so finding, I have considered the "paragraph B" criteria.  To satisfy the "paragraph B" criteria, the mental impairment must result in at least two of the following: marked restriction of activities of daily living; marked difficulties in maintaining social functioning; marked difficulties in maintaining concentration, persistence, or pace; or repeated episodes of decompensation, each of extended duration.  A "marked" limitation means more than "moderate" but less than "extreme."  "Repeated episodes of decompensation, each of extended duration," means three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks.
> Ms. Aminzadeh does not meet the "paragraph B" criteria because she has only mild restriction in activities of daily living.  She testified she does not have a California driver's license.  However, she also testified she takes care of her personal grooming, does household chores, goes grocery shopping, and takes care of her dog and cat, including feeding them and walking them.
> Ms. Aminzadeh has mild restriction in social functioning.  She testified she gets upset with people at work, but she also socialized with them, and, according to her mother, goes out several times a week with family and friends.

> Ms. Aminzadeh has moderate difficulties with concentration, persistence, or pace. She reported she makes bracelets and key chains; however, she testified she has difficulty following instructions. I took the latter into account in my findings regarding her residual functional capacity.
> Ms. Aminzadeh has experienced no episodes of decompensation, which have been of extended duration. There is no evidence of hospitalization for her mental impairment.
> Because Ms. Aminzadeh's mental impairment does not cause at least two "marked" limitations or one "marked" limitation and "repeated" episodes of decompensation, each of extended duration, she does not satisfy the "paragraph B" criteria.

AR 15-16, internal citation omitted. Initially, this Court notes that the ALJ is mistaken by his references to "'paragraph B'" criteria. Paragraph B of Listing 12.05 refers to a "valid verbal, performance, or full scale IQ of 59 or less." The ALJ's own references should have been to paragraph **D** of Listing 12.05, and his analysis certainly comports with that paragraph. For reasons that are not clear, the ALJ did not analyze Plaintiff's impairment under paragraph C of Listing 12.05.

Listing 12.05C states that a claimant must have "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function[.]" 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05C. When a claimant's verbal, performance, and full scale IQs differ, "the lowest of these [is used] in conjunction with 12.05." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00.6.c.

Here, at about eighteen and a half years of age, Plaintiff's performance IQ[5] was assessed at 59; at about twenty years of age her performance IQ was reported to be 65; and about one year later, her performance IQ was recorded at 66. *See* AR 317, 370, 361. Therefore, there is evidence in the record to demonstrate onset of Plaintiff's impairment before the age of twenty-two.

---

[5] "In general an IQ of 70 or below indicates mental retardation (mild = 50/55-70; moderate = 35/40-50/55; severe = 20/25-35/40; profound = below 20/25); an IQ of 70-85 signifies borderline intellectual functioning." Stedman's Medical Dictionary retardation (27th ed. 2000); *see also Brown v. Sec'y of Health & Human Servs.*, 948 F.2d 268, 270 (6th Cir. 1991) (noting that "[t]he Diagnostic and Statistical Manual of Mental Disorders (3d ed. 1987) ('DSM-III-R') distinguishes between four degrees of severity of intellectual impairment: mild, moderate, severe, and profound. I.Q. levels in the range of '50-55 to approx. 70' are labeled as 'Mild Mental Retardation'").

With specific regard to the reported performance IQ in August 2007, when Plaintiff would have been thirty years old, the score was a 73 with an error rate of plus or minus six points. AR 415. Therefore, the score could be as low as 67 or as high as 79. Given the fact there are three previous scores ranging between 59 and 66, all obtained during the developmental period, it is reasonable to infer a decrease of some degree is more likely. In any event, IQ scores remain fairly constant throughout one's life. *Jackson v. Astrue*, 2008 WL 5210668 (C.D. Cal., Dec. 11, 2008) at *6 ("several circuits have held that valid IQ tests create a rebuttable presumption of a fairly constant IQ throughout a claimant's life . . .. The Court finds the reasoning of the Seventh, Eighth, and Eleventh Circuits to be persuasive"); *Schuler v. Astrue*, 2010 WL 1443882 (C.D. Cal., April 7, 2010) at *6 (citing *Hodges, Muncy* and *Luckey* for the proposition "it is presumed that IQ scores remain relatively constant during a person's lifetime"); *Walberg v. Astrue*, 2009 WL 1763295 (E.D. Wash., June 18, 2009) at * 8; *see also Santiago v. Astrue*, No. 07-CV-6239, 2008 WL 2405728, *4 (W.D.N.Y. June 11, 2008). This is so because Plaintiff's IQ scores were relatively consistent during her late teens and early twenties.

Notably too, courts have found that circumstantial evidence can infer a deficit in adaptive functioning prior to the age of twenty-two. Examples of such evidence includes attendance in special education classes, dropping out of high school prior to graduation, difficulties in reading, writing or math, and low skilled work history. *See, e.g., Christner v. Astrue*, 498 F.3d 790, 793 (8th Cir. 2007); *Gomez v. Astrue*, 695 F.Supp.2d 1049 (C.D. Cal. 2010); *Payne v. Astrue*, 2010 WL 654319 (D. Ariz., Feb. 23, 2010) at *11.

Here, while Plaintiff did graduate from high school, the record establishes that she attended special education classes and had difficulty in the areas of reasoning, memory, and attention. AR 310-311, 316, 318; *see also* AR 46 (in special education classes "[h]er entire life"). Generally, evidence of participation in special education classes permits an inference of an onset date for mental retardation before age twenty-two. *Gomez v. Astrue*, 695 F.Supp.2d at

1061. Just prior to her having graduated high school, the record also indicates Plaintiff was not proficient in the areas of reading, writing, and math. AR 312; *see also* AR 316 (failing graduate requirements for competency in reading, math and writing). Moreover, Plaintiff has a low skilled work history. AR 131-133 (highest annual earnings were $9,613.44). A history of low level work also constitutes relevant evidence fo mental retardation. *See Gomez*, 695 F.Supp.2d at 1058.

Considering the foregoing together with Plaintiff's valid performance IQ scores between 59 and 66, this Court finds that the onset of Plaintiff's mental retardation occurred prior to the age of twenty-two.

Moreover, there is other evidence of record concerning Plaintiff's condition, including the fact that Plaintiff has difficulty interacting with others in a work setting. A conference memo dated December 21, 2011, from Von's illustrates this difficulty. Further, it references a previous conference memo and four prior verbal warnings related to conduct. AR 306. Plaintiff and her mother testified regarding this incident. AR 36-38, 48; *see also* AR 295. Plaintiff's mother testified[6] that Plaintiff gets frustrated and angry frequently. AR 47-48; *see also* AR 292 (frustration while working events at the Save Mart Center). Additionally, Plaintiff is currently assisted by a job coach and has been similarly assisted since 2005. AR 47, 292. Even when Plaintiff was employed at Von's, she was able to get extra help and assistance from other employees in a supervisory capacity. AR 49-50. Finally, the record also establishes deficits at an early age. AR 473-477.

The second prong of Listing 12.05C requires an examination of Plaintiff's impairments and their impact on her ability to work. In addition to borderline intellectual functioning, ALJ

---

[6]This Court notes that the ALJ found Ms. Everitt less than credible, in part, because, he found, she "admitted Ms. Aminzadeh's ability to work full time 'would depend on the job.'" AR 18. However, a careful review of Ms. Everitt's complete testimony reveals the ALJ's quotation is taken out of context. In fact, Ms. Everitt was explaining that even were a job one that it appeared Plaintiff was qualified for as far as skills were concerned, Plaintiff's inability to understand or the likelihood she may misinterpret what she was told would not permit full time work. *See* AR 50-51.

1  Larsen identified two other severe impairments at step two: obesity and lumbar degenerative disc
2  disease. AR 15. A finding of severe impairment at step two is a *per se* finding of "impairment
3  imposing additional and significant work-related limitation of function" as employed in the
4  second prong of Listing 12.05C. *See Fanning v. Bowen*, 827 F.2d 631, 633 (9th Cir. 1987);
5  *Huber v. Astrue*, 2010 WL 4684021 (D. Ariz., Nov. 12, 2010) at *2; *Rowens v. Astrue*, 2010 WL
6  3036478 (E.D. Cal., Aug. 2, 2010) at *3; *see also Hinkle v. Apfel*, 132 F.3d 1349, 1352 (10th Cir.
7  1997); *Edwards v. Heckler*, 736 F.2d 625, 629-31 (11th Cir. 1984); *Nieves v. Secretary of Health
8  & Human Servs.*, 775 F.2d 12, 14 & n. 7 (1st Cir. 1985).

***The Applicability of Res Judicata***

The Commissioner argues res judicata applies to administrative proceedings, and thus, because Plaintiff was found to be not disabled through May 22, 2000, earlier IQ scores were in effect previously adjudicated against Plaintiff. (Doc. 18 at 6.)

The principles of res judicata apply to administrative decisions; however, the doctrine is not as rigidly applied to administrative proceedings as it is to judicial proceedings. *See Chavez v. Bowen*, 844 F.2d 691, 693 (9th Cir. 1988); *Gregory v. Bowen*, 844 F.2d 664, 666 (9th Cir. 1998). A previous final determination of non-disability also creates a presumption of continuing non-disability with respect to any subsequent unadjudicated period of alleged disability. *See Lester v. Chater*, 81 F.3d 821, 827 (9th Cir. 1995); *Miller v. Heckler*, 770 F.2d 845, 848 (9th Cir. 1985). An ALJ's finding of non-disability creates "a presumption that [the claimant] continued to be able to work after that date." *Id*. To overcome this presumption, the claimant must prove "changed circumstances" indicating a greater disability. *Chavez*, 844 F.2d at 693. The presumption may be overcome by a showing of "changed circumstances," such as new and material changes to the claimant's residual functional capacity, age, education, or work experience. *Lester*, 81 F.3d at 827-828; *see also Chavez*, 844 F.2d at 693. For example, a change in age status after the first determination is a changed circumstance sufficient to rebut the presumption of continuing non-disability and therefore precluded the application of res judicata.

13

*Id*.

Res judicata does not apply when the claimant raises an issue not considered in the previous decision, such as the existence of a new impairment, or demonstrates an increase in the severity of an impairment, either one of which adversely affects his residual functional capacity. *See Lester v. Chater*, 81 F.3d at 827.

Here, the Commissioner cites to pages 230 and 231 of the Administrative Record in support of his argument that the previously unchallenged denial of benefits creates a continuing presumption of non-disability. (Doc. 18 at 7.)  The Court's review of the Commissioner's citation to the record reveals only the fact that prior records pertaining to earlier dispositions have been "destroyed" or the file was never requested.  Moreover, nothing at page 230 or page 231[7] signals to the Court that mental retardation was previously considered, or that an analysis related to Listing 12.05C occurred in previous administrative proceedings, nor does the Commissioner provide any additional citation that would provide such evidence.  Therefore, the Court is not persuaded that res judicata applies.

In sum, because the ALJ failed to expressly consider whether Plaintiff's impairments meet or equal Listing 12.05C, this Court finds the ALJ's failure to do so warrants remand.

### *Reversal with Award of Benefits is Appropriate*

The decision whether to remand a matter pursuant to sentence four of Title 42 of the United States Code section 405(g) or to order immediate repayment of benefits is within the discretion of the district court. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000).  When a court reverses an administrative agency determination, the proper course, except in rare instances, is to remand to the agency for additional investigation or explanation. *Moisa v. Barnhart*, 367 F.3d 882, 886 (9th Cir. 2004), citing *INS v. Ventura*, 537 U.S. 12, 16 (2002).

---

[7] The Court does note that at page 231, disability interviewer T. Yukia noted that Plaintiff had difficulty in the area of understanding during the interview. AR 231. On the next page, the interviewer Yukia noted the following observations: "[Claimant] appeared to have difficulty understanding most of my questions. She asked her mother to help her answer most of them. [Claimant] would get sidetracked on some of these questions. She appeared to get testy very easily at times." AR 232.

14

Generally, an award of benefits is directed only where no useful purpose would be served by further administrative proceedings or where the record is fully developed. *Varney v. Secretary of Health and Human Services*, 859 F.2d 1396, 1399 (9th Cir. 1988).

In this case, and for reasons given above, the Court finds no useful purpose would be served by further administrative proceedings. Additionally, this Court finds the record to be fully developed. Plaintiff has established that she meets the listing for mental retardation and is therefore "presumed disabled, and no further inquiry is necessary." *Baxter v. Sullivan*, 923 F.2d 1391, 1395 (9th Cir. 1991).

Finally, in light of this decision, the Court did not consider Plaintiff's remaining argument that the ALJ also erred at step five. *See Byington v. Chater*, 76 F.3d 246, 250-51 (9th Cir. 1996) ("Because we find that the district court committed error and the decision of the ALJ is supported by substantial evidence, we do not consider the [] other arguments on appeal").

## CONCLUSION

Based on the foregoing, the Court finds that the ALJ's decision is not supported by substantial evidence in the record as a whole and is not based on proper legal standards. Accordingly, this case is REMANDED to the Commissioner of Social Security for a calculation of benefits only. The Clerk of this Court is DIRECTED to enter judgment in favor of Plaintiff Wendy Aminzadeh and against Defendant Michael J. Astrue, Commissioner of Social Security.

IT IS SO ORDERED.

Dated:   **August 2, 2011**              /s/ **Gary S. Austin**
                                   UNITED STATES MAGISTRATE JUDGE